# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### December 5, 2000 Session

## STATE OF TENNESSEE v. SAMMY GOFF

### Direct Appeal from the Circuit Court for Chester County
#### No. 98-010     Roger A. Page, Judge

### No. W1999-01976-CCA-R3-CD - Filed January 31, 2001

The defendant, after being convicted by a jury of first degree murder and sentenced to life without the possibility of parole, appeals his conviction and asserts that the trial court erred in three respects: (1) the trial court incorrectly allowed testimony from three witnesses attacking the defendant's reputation for truthfulness; (2) the trial court erred in allowing the State to question the defendant about a prior felony conviction; and (3) the trial court erred in allowing testimony about a prior statement made by the defendant. After review, we affirm the trial court's rulings in all respects.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

Lloyd R. Tatum, Henderson, Tennessee, for the appellant, Sammy Goff.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Introduction

After being convicted of first degree murder and sentenced to life without the possibility of parole by a Chester County jury, the defendant appeals that conviction and asserts that the trial court erred in three respects: (1) the trial court incorrectly allowed testimony from Clint Goff, Wanda Goff, and Gary Stinnett regarding the defendant's reputation for truthfulness in the community; (2) the trial court erred in allowing the State to question the defendant about a prior felony conviction after the State had apparently completed its cross examination of the defendant, thus violating the defendant's right against incrimination; and (3) the trial court erred in allowing testimony that the defendant had previously stated that "If you shoot someone, make sure they are dead so they can't be a witness

against you." The defendant's appeal is now properly before this court and we affirm the trial court in all respects.

## Facts

On December 5, 1997, the defendant entered the Chester County Sheriff's office and reported that he had found his wife dead and claimed that she had been robbed and murdered. Upon arrival at the defendant's house, the sheriff found no signs of forced entry and found the victim on her side with gunshot wounds to her head and abdomen.

The defendant gave a tape recorded statement later on December 5, 1997, and said that he had spent the day at home with his wife. He stated that at about 9:30 p.m. he went for a drive and left his wife asleep on a mattress on the floor. The defendant claimed that upon returning he found her dead and the contents of her purse dumped on the floor.

In the early morning hours of December 6, 1997, Mark Lewis of the Tennessee Bureau of Investigation met with the defendant and took his statement. The defendant repeated his story about finding his wife dead, the purse being emptied, and a Winchester 30-30 rifle missing. On December 12, 1997, the defendant met with Scott Walley of the Tennessee Bureau of Investigation, and again denied shooting his wife; however, he maintained that his wife had committed suicide. He further stated that because he did not want anyone to know that his wife had committed suicide, he emptied her purse and threw the rifle into a nearby creek so it would appear that she had been robbed and murdered.

The defendant later told investigators that he and his wife made a deal in which he would kill her and then kill himself. However, the defendant claimed that when he returned to the house his wife had already taken her life. He then stated that he did not want people to know his wife committed suicide so he shot her again and made the scene look like a robbery.

At trial, the defendant testified on his own behalf and continued his claim that he did not kill his wife, rather she took her own life. Several medical examiners and forensic pathologists testified for both the State and the defense about the cause of death. At issue was whether the victim committed suicide or whether someone shot and killed her. Because of the defendant's statements to police and his testimony at trial, suicide was the crux of the defendant's defense to the murder charge. The defendant's credibility was clearly at issue in this case as he sought to persuade the jury that his wife had shot herself in the head and he later shot her in the abdomen to make the incident look like a robbery rather than a suicide. Although one of the defendant's experts testified that the shot to the victim's head could have occurred first, the jury had sufficient evidence to conclude that the defendant could have fired both shots. The jury apparently accredited the State's expert and rejected the defendant's expert and the defendant's contentions and concluded that the defendant shot his wife in the head and she did not commit suicide.

In an effort to impeach the defendant's credibility, the State offered several witnesses to attack the defendant's reputation for truthfulness. The State also questioned the defendant about his prior theft felony to further attack his reputation for truthfulness. These two efforts to attack the defendant's reputation for truthfulness are the subject of the first two issues before this Court. The defendant further challenges the trial court's allowance of testimony that the defendant had previously stated, "If you shot someone, make sure they are dead so they can't be a witness," or words to that effect.

## Analysis

The general admissibility of character evidence is governed by Tennessee Rule of Evidence 404(a), which provides that evidence of a person's character is not admissible to prove that the person acted in accordance with his or her character on the occasion in question. However, Rule 404(a)(3) provides that evidence is allowed when authorized by Rules 607, 608, and 609. In this case, the trial court allowed the State to present testimony under Rule 608(a) that the defendant's reputation for truthfulness was bad.

The defendant challenges the trial court's decision to allow the testimony of Clint Goff, Wanda Goff, and Gary Stinnett about the defendant's reputation for truthfulness. The State presented these witnesses in an effort to attack the defendant's credibility after the defendant testified on his own behalf. Rule 608(a) generally permits reputation evidence of a witness' character for truthfulness or untruthfulness, and provides that

> [t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may only refer to character for truthfulness or untruthfulness, and (2) the evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked.

Although not specifically in the rule, testimonial character evidence pertaining to a witness's reputation for truthfulness is admissible only after a proper foundation is established. See State v. Dutton, 896 S.W.2d 114, 118 (Tenn. 1995); see also Cohen, Paine, & Sheppard, *Tennessee Law of Evidence*, § 6.08 (3)(b) (4th ed. 2000). The defendant claims that the proper foundation was not established to admit these witnesses' testimony and that the trial court erred in allowing their testimony. The defendant's argument is twofold: that the witnesses lacked adequate knowledge of the defendant's reputation in the community and that any knowledge the witnesses had was too far removed in time from the defendant's testimony at trial. We reject both contentions pertaining to all three witnesses, as did the trial court.

We recognize that different standards apply to establishing the proper foundation for the admissibility of testimony about a witness' truthfulness. See, e.g., Dutton, 896 S.W.2d at 118. This testimony can be divided into two types: reputation testimony and opinion testimony. See id.;

*Tennessee Law of Evidence*, § 6.08 (3)(b). The proper foundation for testimony about a witness' reputation in the community is established by showing an acquaintance with the witness under attack, an acquaintance with the community where the witness has lived, and an acquaintance with the circles in which the witness has moved. Dutton, 896 S.W.2d at 118. Prior to allowing opinion testimony about a witness' character, "it must be established that the character witness is 'sufficiently personally familiar with [the primary witness's] character to offer an opinion on the subject.'" Id. (quoting *Tennessee Law of Evidence*, § 6.08 (3)(c)) (alterations in original).

In reviewing the record, defense counsel timely objected to each of the three witnesses' testimony that are being challenged. Specifically, defense counsel asserted that in order to allow testimony about a witness' truthfulness, such proof must relate to the witness' character at the time of trial and none of the witnesses had even spoken to or seen the defendant in over a year. However, the trial court considered this fact and noted that the defendant had been incarcerated during this time period. In fact, the trial court refused to allow another witness to testify about the defendant's truthfulness because that witness had not seen the defendant in several years prior to the defendant's incarceration.

The witnesses that did testify were the defendant's nephew, the defendant's sister-in-law, and the defendant's niece's husband, each whom had known the defendant for approximately twenty years, thirty-five years, and fourteen years, respectively. Furthermore, each of the three witnesses testified under oath that they were familiar with the defendant's reputation in the community. While we recognize that these witnesses' acquaintance with the community was not clearly set out at the time of their testimony, upon reviewing the record as a whole, these witnesses were from this community, were relatives of the defendant, and had known him for fourteen to thirty-five years. Therefore, the trial court properly allowed their testimony. We also agree with the trial court's ruling that the witnesses' testimony about the defendant's truthfulness was not too far removed as to preclude their testimony because the defendant had been incarcerated during the time they had no communications with him.

The defendant next asserts that the trial court erred by allowing, over the defendant's objection, the State to call the defendant back to the stand after the State had apparently completed its cross examination of the defendant. The defendant asserts that because the State had dismissed the defendant and defense counsel had called its next witness then the State was precluded from calling the defendant back to the stand to question him about a prior felony conviction. After reviewing the briefs and the record, it is necessary for us to set out exactly what took place at trial in order to fully understand the parties' positions. The following took place at the conclusion of the defendant's cross examination by the State:

> MR. THOMPSON [for the State]: The witness [defendant] is excused.
> (Witness excused.)
> MR. TATUM [for the defense]: Your Honor, we call Doyle Goff.
> THE COURT: We are going to take a break.

-4-

(A break was taken.)

(Before the jury returned to open court the following proceedings were had to-wit:)

THE COURT: General Thompson, did you have something?

MR. THOMPSON: Your Honor, I apologize. I have done it again. I finished with a witness before I was finished. I would request Your Honor to allow me to open redirect and go into Mr. Goff's prior conviction.

THE COURT: You mean recross?

MR. THOMPSON: Recross, which was the subject of the Morgan hearing that we had earlier this afternoon. I apologize. Just in the excitement of the moment I forgot about it. I'm asking that recross be reopened for that purpose and that purpose alone.

THE COURT: Mr. Tatum?

MR. TATUM: Your Honor, for the record I think the Court should note that Mr. Goff has been sitting down next to counsel or at counsel table for the past fifteen or twenty minutes. Immediately after Mr. Thompson purportedly finished his cross-examination defense counsel rose and called the next witness, Doyle Goff. I think the record would reflect that. At that point the Court informed me that we were going to take a break.

The discussion over whether to allow the State to recall the defendant to the stand continued and the Court cited Tennessee Rule of Evidence 611 and noted the Court's discretion in controlling trial matters and the mode of interrogation. The trial judge then allowed the State to recall the defendant and limited the interrogation to simply asking the defendant if he had been convicted of theft over $10,000 in Carroll County Circuit Court. After the defendant admitted to the conviction, the trial judge then instructed the jury that the conviction was to only be considered for impeaching the defendant's credibility as a witness.

The defendant claims that because he was dismissed and defense counsel called the next witness, allowing the State to call the defendant to the stand amounted to the State calling the defendant to testify against himself, thus violating his constitutional right against self incrimination. The defendant in this case had already testified on his own behalf and had waived his right not to testify, submitting himself to cross-examination. The trial court, by exercising its discretion under Rule 611, simply allowed the State to continue with its cross examination. We find no error in the trial court's exercise of its discretion, much less any plain abuse of that discretion to constitute grounds for reversal. See, e.g., State v. Gaylor, 862 S.W.2d 546 (Tenn. Crim. App. 1992).

Finally, the defendant asserts that the trial court erred in allowing Gary Stinnett, the defendant's neighbor, to testify that the defendant had previously stated that "If you shoot someone, make sure they are dead so they can't be a witness against you." The statement was allegedly made a couple of weeks before the victim's death. The defendant alleges that the statement was made too

far in advance of the events alleged in the indictment and that it was made in the context of an old shooting incident where the defendant was acting in self defense. The defendant claimed that the statement was highly prejudicial because introduction of the statement would force the defendant to explain the context in which the statement was made, thus informing the jury that the defendant had previously shot someone. The trial court, however, allowed this testimony under Tennessee Rule of Evidence 403, finding its probative value toward the issue of the defendant's state of mind outweighing any unfair prejudice to the defendant. We agree with the trial court's ruling.

## **Conclusion**

After review of the record before us and consideration of the defendant's claims, we hold that the trial court did not err in allowing the testimony of three character witness to impeach the defendant's testimony, did not err in allowing the State to continue its cross examination of the defendant regarding a prior felony conviction, and did not err in allowing the defendant's neighbor to testify about the defendant's prior statement. We affirm the trial court in all respects.

_____
JOHN EVERETT WILLIAMS, JUDGE